(100 South. 403)

No. 26228.

## MOSELEY v. GILHAM et al.

(April 30, 1924.)

*(Syllabus by Editorial Staff.)*

Specific performance   &#x25c9;&#x21d2;121(11)—Evidence held to show that title offered vendee good by prescription.

In suit for specific performance of contract to purchase land, wherein defendant claimed that title offered was suggestive of future litigation, evidence *held* to sustain finding that title in plaintiff was good by prescription of 30 years.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; J. A. Williams, Judge.

Suit by Henry V. Moseley against Paul A. Gilham and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Lamar Polk, of Alexandria, for appellants.

Hakenyos, Hunter & Scott, of Alexandria, for appellee.

By Division B, composed of DAWKINS, LAND, and LECHE, JJ.

LECHE, J. On June 30, 1886, M. C. Moseley acquired from Carter Carr, Jr., and Frances Carr, a lot of ground situated in the city of Alexandria. At the death of M. C. Moseley, his son Henry V. Moseley, who is plaintiff in this case, was by an order of court recognized as sole heir, and as such placed in possession of the property. In November, 1922, plaintiff entered into a contract with the defendant Paul A. Gilham, whereby he promised to sell, and defendant promised to buy, the said property. Defendant having refused to comply with his promise to buy, plaintiff then brought the present suit to enforce specific performance.

Defendant in his answer expresses his entire willingness to comply with his agreement to buy, but justifies his refusal, and declares that the title which plaintiff has tendered is one which is suggestive of future litigation, for the reason that, when M. C. Moseley purchased the property in 1886, there appeared to be some outstanding interests in the property which had not been acquired by Moseley, that Carter Carr, Jr., was then a minor, and that Moseley could not thus have acquired the interest of Carter Carr, Jr., and that there is no pretense that he ever acquired the interest of Lelia Carr, then also a minor, and who also was part owner of the property.

Plaintiff, upon being informed of defendants' reasons for refusing to accept title, brought another action, in jactitation, in which Lelia Carr, now Lelia Carr Bell, was made a party defendant.

The two suits, that is, the one against Gilham and the other against the alleged co-owners of the property with Carter Carr, Jr., were consolidated and tried, and from a judgment in favor of plaintiff the defendant has appealed.

The fact is not disputed that plaintiff through himself and his father has been in the actual and open physical possession of the property since June 30, 1886, and the sole question in the case is whether plaintiff's title has become perfected by the prescription of 30 years.

The present suit was filed January 10, 1923. The evidence as to the minority of Carter Carr, Jr., at the time he sold to Moseley on June 30, 1886, is not at all clear, but it is equally as convincing of the fact that Carr was then about 18 years of age as it is of the fact that he was a minor. The witnesses who testify on that subject are colored and illiterate, and it is evident from the manner in which they testify that they have no definite recollection of the facts which they attempt to establish. The mother of Carter Carr, Jr., does not remember anything about the date of her marriage or about the ages of her children, and she says that Mr. Moseley told her he was going to emancipate her son, Carter. After Carter sold the property, she and her daughter Lelia, who had been living on it as a home, moved away. John Kelso, related by marriage to the Carrs, testifies that he always understood that Carter Carr, when he sold the property, had been emancipated. Fanny Lee, another witness, thought that Lelia was about 15 or 16 when the property was sold, and she says that Carter was older than Lelia but under 18 years of age. Accepting these facts as true, Carter Carr, Jr., should in any event have reached the age of majority in 1889 or 1890, or some 33 years before the filing of this suit.

It is therefore obvious that the prescription of 30 years had already accrued when the suit was filed.

As to the claim, if any, of Lelia Carr to part-ownership of the property, it must be assumed that she has none. She made no appearance and did not answer the petition of plaintiff, charging her with slandering his title. Judgment by default was entered and confirmed against her on June 22, 1922, and she has not appealed.

Our understanding of the facts in this case is that the lot in suit was part of a larger parcel of land acquired by Barney Carr in 1850; that this land was subsequently partitioned between the children of Barney Carr; that Carter Carr, Sr., became owner of one of the parts, including the lot which is the subject of the present suit; that Carter Carr, Jr., vendor of plaintiff's father, and Lelia Carr, became the owners of same by inheritance from their deceased father; that Carter Carr, Jr., sold to plaintiff's father in 1886, and therefore under the law it follows that plaintiff's title has now become perfected by the prescription of 30 years.

It may be that Frances Carr, widow of Carter Carr, Sr., and mother of Carter Carr, Jr., and of Lelia Carr, also acquired an interest in the property as surviving mother and heir of two deceased minor children born of her marriage with Carter Carr, Sr.; but that is uncertain, as the record does not show whether Carter Carr, Sr., died before or after these children. However, this is of no importance, as Frances Carr also signed the title to M. C. Moseley.

If plaintiff's title has been perfected by the prescription of 30 years as against the heirs of Carter Carr, Sr., it follows a fortiori that the same prescription has divested the heirs of Barney Carr, father and author in title of Carter Carr, Sr., of any right, claim, or interest they might have had in and to the same property.

For these reasons we believe the title which plaintiff has tendered to the defendant is good and valid and not suggestive of future litigation, and therefore that the judgment appealed from should be affirmed and

It is so ordered.